UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BHRAHMANI 1 LLC**                         CASE NO.  2:21-CV-02562

**VERSUS**                                  JUDGE JAMES D. CAIN, JR.

**AMGUARD INSURANCE CO**                    MAGISTRATE JUDGE KAY

## MEMORANDUM ORDER

Before the Court is AmGUARD's Daubert Motion (Doc. 53), wherein it moves the Court to exclude the report and testimony of Timothy May regarding the estimate prepared by Complete Adjusting Services, LLC ("CAS"). Plaintiff Bhrahmani 1 LLC d/b/a More 4 Le$$ #2 opposes the motion. Doc. 58. AmGUARD has replied. Doc. 68.

### I. BACKGROUND

This diversity action arises from insurance coverage dispute that stems from damages caused by Hurricane Laura to Plaintiff's property located at 1310 N Martin Luther King Hwy., Lake Charles, Louisiana 70601-2051 ("Property") on August 27, 2020. Doc. 1, p. 2.  The Property was built around 1979 and was converted from an auto parts store in 2011. Doc. 38-1, p. 1. Plaintiff purchased the Property in 2015. *Id.* AmGUARD provided a policy of insurance, number BHBP088505 ("Policy"), to Plaintiff, which covered the Property against perils including hurricanes and provided the following coverages: $2,500 for awnings coverage; $946,400 for building coverage; $230,000 for business personal property coverage; $10,000 for debris removal; $15,000 for fungi, wet rot, dry rot; $10,000

for ordinance and law.[1] Doc. 1, p. 2; doc. 38-1, p. 2. On August 31, 2020, Plaintiff reported the loss to AmGUARD, who assigned it claim number BHBP088505-001-001-001. Doc. 38-1, p. 2. On September 1, 2020, AmGUARD retained an independent third-party adjuster, Engle Martin & Associates. Doc. 38-1, p. 3–4. On September 8, 2020, Engle Martin inspected the Property. *Id.* at 3; doc. 14, p. 5. On November 11, 2020, Plaintiff retained CAS, which inspected the Property. Doc. 1, p. 3. CAS included estimates for items that Engle Martin did not observe to be damaged or did not find necessary, such as replacement of the entire roof, windows, glass front door, fluorescent lights, and vinyl floor tiles. Doc. 38-1, p. 9. On November 20, 2020, Plaintiff sent a demand letter to AmGUARD to release unconditional tenders. Doc. 1, p. 4; doc. 14, p. 6. On August 8, 2021, Plaintiff filed suit in this Court alleging claims for damages under breach of insurance contract, bad faith claims adjusting, and other bad acts, including penalties, under Louisiana Revised Statutes sections 22:1892 and 22:1973. Doc. 1, p 6–7. Trial is set for May 22, 2023, at 9 a.m. *Id.*

## II.  **LEGAL STANDARD**

"Trial courts have wide discretion in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Limited v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (internal quotation omitted). A plaintiff must establish the admissibility of the testimony under Article 702 of the Federal Rules of Evidence. The party seeking to offer opinion testimony has the burden to "demonstrate

---

[1] AmGUARD does not deny this coverage.

that the expert's findings and conclusions are based on the scientific method, and therefore, are reliable." *See Turner v. Brunk*, 2016 WL 11190298 (M.D. La. Dec. 6, 2016), *quoting Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Federal Rule of Evidence 702 permits:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b. the testimony is based on sufficient facts or data;
>
> c. the testimony is the product of reliable principles and methods; and
>
> d. the expert has reliable applied the principles and methods to the facts of the case.

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is

based.[2] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981, at *3 (quoting *Daubert*, 509 U.S. at 596).

### III. LAW & ANALYSIS

AmGUARD argues that Mr. May is self-taught in Xactimate using YouTube videos. Doc. 53-1, p. 5. Furthermore, AmGUARD claims that Mr. May was hired specifically to rubber stamp the CAS estimate prepared by a deceased CAS employee. *Id.* at 5-6. To Mr. May's qualifications, AmGUARD claims that he has no experience in the area of public-adjusting and he started as a field inspector for CAS in January 2021 after spending 24 years in law enforcement. *Id.* at 12–13. Also, AmGUARD argues that while Mr. May has

---

[2] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact specific. *Kumho*, 526 U.S. at 150.

had his held his public adjusting license for two years, he did not hold it when Hurricane Laura hit or when the CAS estimate for Plaintiff's property was prepared. *Id.* at 13. To the contrary, Plaintiff argues that Mr. May is qualified as an expert in public adjusting—despite neither preparing the CAS estimate nor working as an adjuster at CAS nor ever working as a contractor or in construction—because he is licensed in Louisiana as a public adjuster, he has performed Hurricane Laura, Delta, and Zeta investigations with CAS, he understands field public adjuster procedures implemented by CAS, and his experience as a police officer is the same as estimating as a public adjuster. Doc. 58, pp. 10–13.

Mr. May testified in his March 30, 2023 deposition that from February to December 2021 he worked for CAS as an inspector tasked to go to the property, take pictures, and report the information to CAS's owner, now deceased, who would create the estimate. Doc. 53-5, p. 5. Then in December 2021, after receiving his public adjusters license, Mr. May testified that he continued to work as an inspector at CAS; he did not estimate any properties while at CAS. *Id.* at 6. And as of December 2022, Mr. May has been employed by Victory where he stated that he has estimated "10, 15" properties. *Id.* at 10. Furthermore, Mr. May testified that as of the date of his deposition, he had handled a commercial property on his own with Victory. *Id.* at 9.

Plaintiff offers Mr. May as an expert in public adjusting and it expects him to testify to his observations, the valuation of damages, scope of damages, and causal link between the loss event and damages incurred by the Property under all coverages, as well as the claims adjusting timeline in this matter by the insurance company and its agents/employees. Doc. 53-5, p. 1. Mr. May began working at CAS in February 2021, and

although he had no part in Plaintiff's November 20, 2020 CAS Report, doc. 25-3, pp. 7–8, Mr. May did visit Plaintiff's property on October 3, 2022, during AmGUARD's inspection prepared by MKA International, Inc., doc. 25-9, p. 7. Furthermore, Mr. May has worked as a licensed adjuster with Victory, doing estimating work using Xactimate. Doc. 53-5, pp. 12, 29–31. AmGUARD's criticisms and concerns over Mr. May's testimony go to the weight of the evidence not the veracity and, therefore, are best addressed at trial where his testimony will be subject to vigorous cross-examination. *See Scordill*, 2003 WL 22427981 at *3 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion . . . and should be left for the jury's consideration."). Therefore, after reviewing Mr. May's expert designation, his CV, his narrative summary, and his March 30 deposition, the Court finds that Mr. May may testify as an expert in public adjusting. Accordingly, the request that Mr. May and the CAS estimate and report will be denied.

## IV. <u>CONCLUSION</u>

For the aforesaid reasons,

**IT IS ORDERED** that Defendant's Daubert Motion (Doc. 53) will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 15th day of May 2023.

JAMES D. CAIN, JR.<br>
<b>UNITED STATES DISTRICT JUDGE</b>